FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ JUN 27 2012 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

CHRISTOPHER E. McLAUGHLIN,

               Plaintiff,

-against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

               Defendant.

----------------------------------------------------------------X

**MEMORANDUM & ORDER**

10-CV-0506 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

     Plaintiff Christopher E. McLaughlin brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking reversal of the Social Security Administration's ("SSA") decision that he was not a child of a deceased wage earner within the meaning of the Social Security Act ("the Act") and therefore not entitled to surviving child's benefits. McLaughlin argues that the SSA erred in finding that he did not meet the statutory requirements for benefits. The Commissioner of Social Security ("Commissioner") has filed a motion, and McLaughlin has filed a cross-motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is GRANTED in part and DENIED in part, McLaughlin's motion is GRANTED in part and DENIED in part, and this case is REMANDED to the SSA for further proceedings.

**I.    BACKGROUND**

     On September 14, 2005, Christine McLaughlin filed an application for child's insurance benefits on behalf of her son, Christopher E. McLaughlin. The application maintains that Christopher is the son of a deceased wage earner, Edward J. Faicco, who died on February 24, 2002. (Application (Docket #35) at 28-29.)

1

## A.     Facts

Christopher McLaughlin was born on November 7, 1988, to Christine A. McLaughlin. (Supplemental Administrative Record (Docket Entry #37)("Supp. Rec.") at 55.) His birth certificate, filed on November 17, 1989, does not name Edward Faicco, or anyone else, as his father. (Id.) At the time of Christopher McLaughlin's conception and birth, Edward Faicco had a successful family business and was married to Jean Faicco. (Id. at 53) Christine McLaughlin contends that it is for this reason that Edward Faicco refused to recognize in writing that Christopher was his son. (Id.) Nevertheless, according to his mother, Christopher McLaughlin and Edward Faicco had an ongoing father-son relationship and Edward Faicco visited the McLaughlins two to three times a week. (Administrative Record (Docket Entry #35)("Rec.") at 25.) She also alleges that while Edward Faicco did not regularly provide support, he contributed money as needed and for special occasions. (Id. at 36) Christine McLaughlin and Edward Faicco had a relationship for approximately twenty years but never lived together and never married. (Id.)

On June 15, 1999, Edward Faicco filed an application for retirement insurance benefits. (Supp. Rec. at 56-57.) In that application, he did not name Christopher McLaughlin as a child eligible for benefits. (Id. at 56.) When Edward Faicco died on February 24, 2002, he was domiciled in New York and was receiving Social Security retirement benefits. (Rec. at 24.)

On July 12, 2005, Christine McLaughlin filed a paternity petition on Christopher's behalf in the Family Court of the State of New York (Supp. Rec. at 52) and on September 8, 2005, the court issued a filiation order finding Edward Faicco to be the father of Christopher McLaughlin. (Id.) The order was based on the testimony provided by Jean Faicco.[1] (Id. at 54.)

---

[1] This fact has been drawn from the Report of Contact between a Social Security claims representative and Christine McLaughlin. Christine explained to the claims representative that after Edward Faicco's death,

2

### B. Determination of Child Status under the Social Security Act and Regulation promulgated thereunder

The Social Security Act provides that a surviving child of a deceased wage earner who is unmarried, under the age of eighteen or under nineteen if he is a full-time or secondary student, and was dependent upon the insured individual at the time of his death, is entitled to child's insurance benefits. 42 U.S.C. § 402(d)(1). A claimant is a "child" of the insured wage earner within the meaning of the Act if he meets one of several alternative tests. First, a claimant is a "child" if he could inherit the insured's personal property as his child under the intestacy laws of the state in which the insured was domiciled at the time of his death. 42 U.S.C § 416(h)(2)(A). If a claimant does not qualify as the child of the deceased wage earner under state intestacy law, the Act provides alternative criteria under which he may qualify. First, he may qualify as the child of the insured individual if the insured individual and his mother or father went through a marriage ceremony which, but for a legal impediment, would have been a valid marriage. § 416(h)(2)(B). Alternatively, a claimant may be deemed the child of the insured individual if, prior to the individual's death, he either acknowledged the claimant as his son or daughter in writing; had been decreed by a court to be the mother or father of the applicant; or had been ordered by a court to pay child support. § 416(h)(3)(C)(i). A claimant may also be considered the child if there is satisfactory evidence that the insured individual is the parent of the applicant and at the time of his death he "was living with or contributing to the support of the applicant." § 416(h)(3)(C)(ii).

---

Christopher went to the family business where Edward Faicco's three sons worked and informed them that he was their brother. (Supp. Rec. 54) According to Christine McLaughlin, upon receipt of this information, the oldest said that "their mother must not know about the child." (Id.) Nevertheless, the sons "apparently told their mother about Christopher as [Edward Faicco's] wife did end up going to court to say that Christopher was [Edward Faicco's] son." (Id.)

3

The SSA has promulgated regulations to implement these provisions of the Act. The Agency's definitions of "natural child" "closely track 42 U.S.C. § 416(h)(2) and (h)(3). Astrue v. Capato ex rel. B.N.C, 2012 WL 1810219, at *2028 (2012); 20 C.F.R. § 404.355. In fact, "[a]s the SSA reads the statute, 42 U.S.C. § 416(h) . . . is a gateway through which all applicants for insurance benefits as a 'child' must pass." Capato, 2012 WL 1810219, at *2029. Additionally, the regulations contain a section governing the use of state intestacy laws under 42 U.S.C. § 416(h)(2)(A). This section provides, *inter alia*:

> To decide whether you have inheritance rights as the natural child of the insured, we use the law on inheritance rights that the State courts would use to decide whether you could inherit a child's share of the insured's personal property if the insured were to die without leaving a will.
>
> We will not apply any State inheritance law requirement that an action to establish paternity must be taken within a specified period of time measured from the worker's death or the child's birth, or that an action to establish paternity must have been started or completed before the worker's death. If applicable State inheritance law requires a court determination of paternity, we will not require that you obtain such a determination but will decide your paternity by using the standard of proof that the State court would use as the basis for a determination of paternity.

20 C.F.R. § 404.355(b)(2). This provision was created to address state laws that "impose time limits within which someone must act to establish paternity for the purposes of intestate succession." 63 Fed Reg. 57591. The SSA adopted this section because "[s]uch time limits are intended to provide for an orderly and expeditious settlement of estates . . . [which] is not the purpose of Social Security benefits for children . . . ." Id. It is this provision that serves as the basis for Petitioner's appeal.

### C.  Procedural History

On September 14, 2005, Christine McLaughlin filed an application for child's insurance benefits on Christopher's behalf. (Rec. at 24.) The application was denied at both the initial

4

level and upon reconsideration. (Id. at 16.) She requested a hearing on the application before an Administrative Law Judge ("ALJ"); ALJ Ronald R. Bosch held a hearing on the application on February 17, 2009. (Compl. (Docket Entry # 1) ¶ 8.) On March 26, 2009, the ALJ issued a written decision concluding that Christopher McLaughlin was the child of Edward Faicco and thus entitled to child's benefits based on Edward Faicco's earnings record. (Rec. at 17-18.) The ALJ's decision rested on his interpretation of 20 C.F.R. § 404.355, namely, that the "SSA does not apply the portion of New York law which requires paternity action to be completed during the lifetime of the father[] [and that the] Order of Filiation meets the . . . remaining New York requirements for establishing paternity following the putative father's death. (Id. at 18.)

On July 27, 2009 the Appeals Council, on its own motion, reviewed and reversed the ALJ's decision. (Compl. ¶ 9.) The Appeals Council found that the ALJ committed an error of law. (Rec. at 6). It reasoned that the ALJ's conclusion was "according to 20 C.F.R. § 404.355(b)(2) . . . [h]owever, 20 C.F.R. § 404.355 also states that the Administration will decide paternity by using the standard of proof that a State court would use as a basis for a determination of paternity." (Rec. at 7.) The Appeals Council then applied the standards set forth in §§ 416(h)(2)(A) and 416(h)(3)(C) of the Social Security Act. (Id.) According to the Appeals Council, Christopher McLaughlin did not have status as Edward Faicco's son under section 216(h)(2)(A) of the Social Security Act because New York intestacy law required the order of filiation to be entered during the lifetime of the alleged father. (Rec. at 7.) It further found that he "did not meet the alternate requirements for establishing a parent-child relationship under Section 216(h)(3)(C) of the Social Security Act." (Id. at 12.)

On February 2, 2010, Christopher McLaughlin filed the instant Complaint seeking judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), of the Appeals Council's decision

that he was not Edward Faicco's child within the meaning of the Social Security Act and therefore not entitled to child's benefits. (See Compl.) Christopher McLaughlin and the Commissioner cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def. Mem. (Docket Entry # 30); Pl. Mem. (Docket Entry # 32).) Both parties filed reply memoranda in further support of their motions for judgment on the pleadings. (Def. Reply Mem. (Docket Entry # 33); Pl. Reply Mem. (Docket Entry # 34).)

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(c)

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). The standard for reviewing a Rule 12(c) motion is the same standard that is applied to a Rule 12(b)(6) motion to dismiss for failure to state a claim. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive either kind of motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B. Review of Final Determinations of the Social Security Agency

"The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). "A district court may set aside the Commissioner's determination . . . only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Thus, as long as (1) the ALJ has applied the correct legal standard and (2) its findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on this court. See Pogozelski, 2004 WL 1146059, at *9.

### III. DISCUSSION

Claimant argues that the Appeals Council erred in concluding that he was not a child of a deceased wage earner under the Social Security Act. (Compl. ¶ 10-11.) He asserts that (1) the Appeals Council misconstrued § 404.355(b)(2) and, consequently, improperly applied New York intestacy law pursuant to § 416(h)(2)(A) of the Social Security Act, and (2) the ALJ failed to develop the record regarding other grounds for eligibility under New York intestacy law. (Pl. Mem. at 2, 17)

7

### A. Appeals Council's determination that Christopher was not Faicco's child under New York intestacy law

Claimant challenges the SAA's construction of § 404.355(b)(2) as not pertaining to New York intestacy law. (Id. at 14-17.)

"Substantial deference is to be accorded an agency when it interprets its own regulations." Florez v. Callahan, 156 F.3d 438, 442 (2d Cir. 1998). An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461 (1997). "[I]t is axiomatic that the agency's interpretation need not be the best or most natural one by grammatical or other standards[;] [r]ather the agency's view need be only reasonable to warrant deference." Linares Huarcaya v. Mukasey, 550 F.3d 224 (2d Cir. 2008) (quoting Pauley v. BethEnergy Mines, Inc., 501 U.S. 602, 702 (1991)). Thus, the court must defer to the agency's construction "unless an 'alternative reading is compelled by the regulation's plain language or other indications of the [Commissioner's] intent at the time of the regulation's promulgation.'" Thomas Jefferson University v. Shalala, 512 U.S. 504 (1994) (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).

In relevant part, New York intestacy law provides: "a non-marital child is the legitimate child of his father so that he can inherit from his father . . . if a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring paternity . . . ." N.Y. Est. Powers & Trusts Law (EPTL) § 4-1.2(a)(2)(A) (McKinney 1998). Claimant contends that § 404.355(b)(2) removes "the New York State limitation[] making filiation orders effective only if issued before the parent's death." (Pl. Reply Mem. at 3.) He argues that with the limitation removed, the order of filiation issued by the New York Family Court is sufficient to establish his eligibility for benefits as a child of Edward Faicco. Id. The Commissioner, however, interprets

8

the time limits in § 404.355(b)(2) as being "contextual," pertaining only to those states with inheritance laws that "effectively bar . . . 'illegitimate' children from establishing paternity after the punitive father's death, or within a proscribed time period after the putative father's death." (Def. Reply Mem. at 6). He maintains that New York's law does not fall within this category since it provides several alternate criteria for establishing paternity for the purpose of intestate succession. (Id. at 3-4); see EPTL§ 4-1.2(a)(2)(A)-(C). Accordingly, in the Commission's view, § 404.355(b)(2) does not apply to EPTL § 4-1.2(a)(2)(A), and thus Claimant's failure to obtain an order of filiation during the Faicco's lifetime is preclusive. (Id. at 4, 6).

The SSA has construed the regulation so as to harmonize it with other provisions of the Act and of the regulations. Specifically, 42 U.S.C. 416(h)(3)(C)(i)(II) provides that an applicant can establish status as child of a deceased wage earner if "such insured individual had been decreed by a court to be the . . . father of the applicant . . . and such court decree[] or order was made before the death of such insured individual." (emphasis added). Regulation § 404.355(a)(3) similarly states: "[y]ou may be eligible for benefits as the insured's natural child if . . . [y]ou are the insured's natural child and your mother or father has not married the insured, but the insured has . . . been decreed by a court to be your father or mother . . . If the insured is deceased, the . . . court decree, or court order must have been made or issued before his or her death."

Inasmuch as the provisions of the Act that address the existence of a court order as one means of establishing child status -- as well as the associated regulations -- require that such court order be issued during the wage earner's lifetime, it would be anomalous and unwarranted to conclude § 404.355(b)(2) was intended to abrogate the requirement that the order be obtained during the wage earner's lifetime when the purpose of the court order is to establish child status

9

under the taker-in-intestacy test. The Commissioner's interpretation is reasonable as it reconciles the Act and regulations. See generally Linares Huarcaya, 550 F.3d at 230 (holding that Agency permissibly construed regulation as to harmonize it with statutory scheme); Singh v. Mukasey, 536 F.3d 149, 154 (2d Cir. 2008) (same); Joaquin-Porras v. Gonzalez, 435 F.3d 172, 179 (2d Cir. 2008) (when read in context of other statutes, agency's conclusion was reasonable notwithstanding the fact that it appeared to have disregarded the words of the applicable regulation).

### B. Development of the Record Regarding Evidence of Paternity

Claimant argues next that the ALJ did not adequately develop the record to determine whether he would meet an alternate criterion of New York intestacy law, namely, EPTL § 4-1.2(a)(2)(C). (Pl. Mem. at 17.) At the time of the administrative hearing, EPTL § 4-1.2(a)(2)(C) provided that a non-marital child may inherit from his father if "paternity has been established by clear and convincing evidence and the father of the child has openly and notoriously acknowledged the child as his own."[2] This provision is independent of EPTL § 4-1.2(a)(2)(A), addressing orders of filiation.

"[T]he ALJ conducting the administrative hearing has an affirmative duty to investigate facts and develop the record where necessary to adequately assess the basis for granting or denying benefits." Pogozelski v Barnhart, 2004 WL 1146059, at *10. "Where there are gaps in the administrative record, remand to the Commissioner for further development of the evidence is in order." Rosa v. Callahan, 168 F.3d 72, 83 (2d Cir. 1999) (quoting Sobolewski v. Apfel, 985

---

[2] The court notes that EPTL § 4-1.2(a)(2)(C) was amended in 2010 to read as follows: "paternity has been established by clear and convincing evidence, which may include, but is not limited to: (i) evidence derived from a genetic marker test, or (ii) evidence that the father openly and notoriously acknowledged the child as his own . . ." The amendment applies only to estates and decedents who died on or after April 28, 2010. Establishing Inheritance by a Non-Marital Child, 2010 Sess. Law News of N.Y. Ch. 64 (A. 7899-A) (McKinney).

F.Supp 300 (E.D.N.Y. 1997)). Conversely, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete . . . history' the ALJ is under no obligation to seek additional information . . . ." Id. at n. 5.

Christopher McLaughlin maintains that since the ALJ found for him based on the order of filiation, he "did nothing to develop the evidence about other potential grounds for a paternity finding." (Pl. Mem. at 19.) He contends that the "evidence about paternity in the record is very sparse," (id. at 17), and that "the only piece of evidence now in the record on which . . . [his state] filiation order was made is a [unverified] Report of Contact between a local Social Security claims representative and . . . [his] mother." (Pl. Reply Mem. at 6; see Pl. Mem. 17-18.) McLaughlin notes that the ALJ neither obtained records from the state court proceedings that resulted in an order of filiation nor sought information from those who testified in the proceeding. (Pl. Mem. at 18.) Moreover, he argues that "further information could be adduced about the relationship between . . . Faicco and McLaughlin and what the community knew about it." (Pl. Reply Mem. at 6.) In support of this proposition he explains that while the Report of Contact states Edward Faicco's relationship with the McLaughlins was "hidden from [Edward] Faicco's legal wife and his other children". . . it . . . [also] report[s] that . . . Edward Faicco's oldest son and . . . legal wife, appeared and testified in support of . . . McLaughlin's filiation petition in state court." Id.

The court agrees that there is a deficiency in the ALJ's development of the record regarding Christopher McLaughlin's ability to qualify pursuant to EPTL § 4-1.2(a)(2)(C). The posthumous order of filiation upon which the ALJ relied in making his determination, by itself, is insufficient to meet this provision. Grivas v. Port Auth. of New York & New Jersey, 227 A.D. 2d 105, 105, 641 N.Y.S. 2d 646, 647 (1996). However, "[the] qualifying standard [for proving

11

paternity by clear and convincing evidence under EPTL § 4-1.2(a)(2)(C)] is virtually the same as that required to prevail in a posthumous paternity proceeding." Id. at 105-06, 647; See N.Y. Fam. Ct Act § 519 (McKinney). Yet, other than the Report of Contact, the record is bereft of any information that led the Family Court to the issue the order of filiation. Moreover, claimant correctly highlights a clear gap in the administrative record, namely that Edward Faicco was assiduous in keeping Christopher McLaughlin a secret from his wife, yet his wife's testimony was dispositive in issuing the order of filiation. Thus, the ALJ had an obligation to inquire further.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is GRANTED in part and DENIED in part, Plaintiff's cross-motion for judgment on the pleadings is GRANTED in part and DENIED in part, and this case is REMANDED to the Commissioner for a proper evaluation of the whether paternity can be established pursuant to EPTL § 4-1.2(a)(2)(C).[3]

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York  
June 2̲6̲, 2012

NICHOLAS G. GARAUFIS  
United States District Judge

---

[3] Christopher McLaughlin has asked the court to remand his case for calculation of benefits. (See Pl. Mem. at 2.) See generally Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998) (where the ALJ commits legal error, the court may either "(1) remand[] for reconsideration by the Commissioner upon the existing record or upon a record to be amplified, or (2) remand for calculation of benefits"). The court does not find that there is unequivocal evidence of child status or that further findings would be unhelpful to assure proper disposition of McLaughlin's claim; thus, a remand for further proceedings is proper. See Pokorny v. Astrue, No. 09-CV-1694 (NGG) (JO), 2010 WL 5173593, at *5 (E.D.N.Y. Dec. 14, 2010); Pogozelski, 2004 WL 1146059, at *20.

On remand, the agency shall apply EPTL § 4-1.2(a)(2)(C) as amended in 2010. See 20 C.F.R. § 404.355(b)(4) (providing that the agency "will apply the version of State law in effect when [it] make[s] [its] final decision on [an] application for benefits"). If Christopher McLaughlin does not qualify under that version, it is to apply the version that was in effect at the time of Edward Faicco's death or "any version . . . in effect from the first month for which [McLaughlin] could be entitled to benefits . . . ." Id.